DUBAY *v.* KELLY.

1. COVENANTS—ACTION FOR BREACH—DAMAGES—EVIDENCE.
    In an action for breach of covenant of seisin, evidence of the costs taxed against plaintiff in an ejectment suit to recover a part of the land which defendant had been notified, but had failed, to take charge of, was admissible notwithstanding the abolition of the common-law remedy of voucher in real actions by 3 Comp. Laws, § 11198.

2. SAME—PAROL EVIDENCE TO VARY DEED.
    In an action for breach of covenant of seisin in a deed to a lot of land described by reference to a recorded plat, evidence that before plaintiff obtained the deed he was on the ground, and noticed that the fences did not seem to be on the lines shown by the plat, to which he called defendant's attention, who represented that as soon as the grain was cut he would have the fences moved to the true line, was not objectionable as an attempt to contradict the deed by parol.

3. SAME—ANCIENT PLATS—INSTRUCTIONS.
    In an action for breach of covenant of seisin in a deed to a lot conveyed according to a plat made in 1899, such plat not

being ancient, a request to charge that few of the early plats were accurate, and that lines shown thereon should not be corrected by new surveys, was inapplicable.

4. SAME—DAMAGES—INSTRUCTIONS.
Where, in an action for breach of covenant of seisin in a deed, by failure of title to certain gores of land along the boundary lines, it appeared that defendant had sold the land for less than its actual value, an instruction, permitting a recovery for the difference in value between the lot with its boundaries as described, and what it was actually worth with the gores cut out of it, as shown by the evidence, was prejudicial error.

5. SAME—DAMAGES—LOSS OF PART OF TRACT.
Where a covenant of seisin was broken as to a part of the land conveyed, the measure of damages, in the absence of fraud, was such a proportion of the price as the part to which title failed bore to the tract conveyed, with interest.

Error to Wayne; Donovan, J. Submitted February 23, 1904. (Docket No. 118.) Decided July 27, 1904.

Assumpsit by John Dubay against George H. Kelly for breach of covenant of seisin in a deed. There was judgment for plaintiff, and defendant brings error. Reversed.

*Walter Barlow*, for appellant.

*Jasper C. Gates*, for appellee.

MOORE, C. J. Plaintiff sued to recover damages for breach of covenant of seisin in a warranty deed dated June 25, 1900. The plaintiff recovered a judgment. The defendant has brought the case here by writ of error.

A reference to the plat on the following page will aid in understanding the questions involved. The Juif estate was the owner of a quantity of real estate in the township of Gratiot. In 1898 and 1899 Mason L. Brown, an engineer and surveyor, was employed to survey, subdivide, and plat it for the heirs. He did so, and made a plat in all respects like the annexed plat, except it did not have the broken lines on it showing the location of the fences. This plat was re-

SUBDIVISION OF LOT 4 OF ALTER'S PLAT OF PRIVATE CLAIM 570 FOR THE ESTATE OF MARGARET JUIF, TOWNSHIP OF GRATIOT

MARGARET JUIF KELLY 15.074 A.

Lot 6

Lot 1 GEORGE JUIF 8.628 ACRES

Lot 2 JOSEPH JUIF 8.602 ACRES

Lot 3 JACOB JUIF 8.602 ACRES

Lot 4 ROSA JUIF KELLY 8.602 ACRES

Lot 5 MARY JUIF 8.602 ACRES

THIS MAP WAS MADE ABOUT THE 16TH DAY OF APRIL 1903, THE ORIGINAL PLAT, EXHIBIT "2", DOES NOT CONTAIN THE BROKEN LINES SHOWING THE LOCATION OF THE FENCES

corded at page 117, Liber 512 of Deeds, Wayne county records. June 25, 1900, by warranty deed, and for a consideration of $1,600, defendant conveyed to plaintiff lot 6 "according to the plat of the subdivision of the estate of Margaret Juif, deceased, as recorded in Liber 512 of Deeds, page 117, Wayne county records." It is undisputed that when this deed was made defendant had neither title to nor possession of the whole of this lot 6. One Joseph L. Miner was, and still is, the owner and in possession of certain gores of lot 6, which aggregate nearly one-half acre. For the purpose of getting possession of these gores the plaintiff brought ejectment against Mr. Miner, and gave notice to Mr. Kelly to take charge of the case. Mr. Kelly paid no attention to the case. Upon the trial a judgment was rendered in favor of Mr. Miner, and his costs were taxed against the plaintiff in the sum of $43.40. The taxed bill of costs was offered in evidence. Plaintiff also gave evidence that he paid in that case an entry fee of $4, a stenographer's fee of $3, and to Mr. Kelly $2.80 as witness fees, making a total of $53.20. Error is assigned on the admission of this testimony. Counsel says:

" The practice endeavored to be adopted by the plaintiff to bring the defendant Kelly into that suit was the old common-law remedy known as ' voucher to warranty.' * * * The remedy known as ' voucher in real actions' under the old common law has, however, been expressly abolished by our statute. 3 Comp. Laws, § 11198."

We think the testimony was properly admitted, under *Webb* v. *Holt*, 113 Mich. 338 (71 N. W. 637).

Plaintiff was allowed to put in evidence tending to show that before he obtained his deed he was on the ground, and noticed that the fences did not seem to be on the lines of lot 6, and called the attention of defendant to it, and he represented that, as soon as the grain was cut, he would have them moved upon the true line. Counsel say this was improper, because it occurred before the deed was made, and all conversations are merged in the deed. There would be much force in this construction if it was

sought to dispute the deed by parol testimony; but it is not. The testimony is in harmony with the deed, and shows the negotiations between the parties. See *Dikeman* v. *Arnold*, 83 Mich. 218 (47 N. W. 113).

Counsel are not all agreed as to what is involved in this case. It is the claim of plaintiff that he was deeded lot 6 according to the recorded plat thereof, and that defendant did not make good his title to all of the land shown in said plat; while defendant claims the action is brought to recover a claimed discrepancy in the acreage conveyed. Defendant preferred a great many requests bearing along the same line. It will answer every purpose to insert one of them. It reads:

" Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and, if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed, the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity. But no law can sanction this course. *Diehl* v. *Zanger*, 39 Mich. 601, 605."

The trouble with these requests is they do not apply to the record as made. The plat which is referred to in the deed was not an ancient plat, but was made in 1899. It showed the stakes and the outlines of lot 6. It did not show the location of the fences. Defendant saw fit to make this plat part of his deed. See *Wilson* v. *Hoffman*, 70 Mich. 552 (38 N. W. 558); *Nichols* v. *Furniture Co.*, 100 Mich. 230 (59 N. W. 155), and cases there cited. There is no question from the record but that the lines of the lot as shown by the plat embrace more land than was inclosed within the fences. The testimony is also irresistible that defendant knew this. The plaintiff and his witnesses say he agreed to move the fences back. He says he agreed to do what he could to have them moved back.

Upon this branch of the case the court might very properly have directed a verdict in favor of the plaintiff.

We now come to the question of damages. The court was requested to charge the jury that the measure of damages is the value of the land so lost to the plaintiff as agreed on at the time of the conveyance of lot 6 to him by the defendant as expressed in the consideration of such conveyance. This is at the rate of $106.666 per acre. Upon that branch of the case the judge charged:

"It is for you to consider the situation. We are coming now to the value, the surroundings and value of this property, and to determine from the evidence how much these gores are worth; and the question is how much more lot six would have been worth if these boundaries had been as laid out in the plat, or referred to in the deed from the defendant to the plaintiff, than it was actually worth with the gores cut out of it, as shown by the evidence in the case. If you find for the plaintiff, you are to determine the amount of this value, and give the plaintiff a verdict therefor, which is proper, and you are to add interest at the rate of five per cent. from the 25th of June, 1900, the date of the delivery of the deed."

It will be observed that the great bulk of this lot did not adjoin a highway. It was reached from the Alter Road, having only 99 feet frontage thereon, and half way back this strip was narrowed by the gore to 50 feet. The rule contended for by defendant would be very unjust. When one has failed to obtain title to land sold him his damages in a suit on the covenants of his deed are determined, not as stated in the foregoing charge, by the actual value of the land lost—as it would be in a case of a suit for fraud (see *Page* v. *Wells*, 37 Mich. 415; *Jackson* v. *Armstrong*, 50 Mich. 65 [14 N. W. 702]), but by the consideration paid for the land (see *Cook* v. *Curtis*, 68 Mich. 612–619 [36 N. W. 692]). His recovery is limited to that consideration, with interest. See 2 Warvelle on Vendors (2d Ed.), § 967. If, therefore, the title to the entire land conveyed to plaintiff by defendant had failed, plaintiff could have recovered no more than the amount paid, with legal interest thereon. In this case the title to a portion of that land

has failed. In accordance with the foregoing principle, the recovery in such case must be limited to such a proportion of the consideration paid as the value of the land, the title to which failed, is of the entire value of the parcel conveyed; otherwise one might recover more for the loss of a part of his land than he could for the loss of the whole. The charge would not have been prejudicial to defendant had he not sold the land for less than its actual value. The testimony shows that he sold the entire tract of 15 acres for $1,600, or $106.666 per acre. There was testimony that its actual value was $200 per acre. It is to be presumed from the jury's verdict that they accepted this testimony, and that, therefore, defendant was prejudiced by the charge under consideration. For this error judgment must be reversed.

There was testimony that the land fronting on Alter Road was worth $300 an acre, or one-half more than the average price of the entire tract. Regarding this difference in value as a basis in computation, the value of the gores, according to the contract price, would be $160 per acre, or, for the .494 acres, $79.04, to which sum should be added $53.20 for costs in the ejectment suit, and interest from June 25, 1900. A judgment may be rendered here for that amount, or a new trial will be ordered, at the option of the defendant. In either case defendant will recover costs of this court.

The other assignments of error have been examined. We think they are without merit, but do not think it necessary to discuss them.

Judgment is reversed.

The other Justices concurred.